IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **TAMMIE S. WARE,** ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO. 11 CV-1856** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of the Social,** ) | |
| **Security Administration** ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM OPINION**

**I. INTRODUCTION**

On March 17, 2008, the claimant, Tammie Sherell Ware, applied for supplemental security income under Title XVI of the Social Security Act. (R. 122-125). The claimant alleges disability commencing on January 20, 2008 because of acid reflux, thyroid cancer, cystecomy, and a hiatal hernia. (R. 37, 122-125, 167). The Commissioner denied the claim both initially and on reconsideration. (R. 58-69). The claimant filed a timely request for a hearing before an Administrative Law Judge (ALJ), and the ALJ held a hearing on November 13, 2009. (R. 34-56, 79-84).  In a decision dated February 26, 2010, the ALJ found that the claimant was not disabled as defined by the Social Security Act and, thus, was ineligible for supplemental security income. (R. 14-29, 34-56). On April 6, 2011, the Appeals Council denied the claimant's request for review; consequently, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration. (R. 1-6). The claimant has exhausted her administrative remedies, and this court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1631(c)(3). For the

reasons stated below, this court affirms the decision of the Commissioner.

## II. ISSUES PRESENTED

The claimant presents two issues: (1) whether the ALJ failed to consider the effects of obesity on the claimant's residual functional capacity ("RFC"); and (2) whether the ALJ erred by failing to obtain an additional medical opinion to determine the claimant's RFC.

## III. STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if the factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No. . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. This court does not review the Commissioner's factual determinations *de novo*. The court will affirm those factual determinations that are supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] factual findings." *Walker*, 826 F.2d at 999. A reviewing court must not look only to those parts of the record that support the decision of the ALJ, but also must view the record in its entirety and take account of evidence that detracts from the evidence relied on by the

2

ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

## IV. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  To make this determination, the Commissioner employs a five-step, sequential process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[1]

To establish disability, the claimant has the burden of proving the first three steps, namely that (1) she is not engaged in substantial gainful activity, (2) she has a severe impairment or combination of impairments, and (3) her impairment or impairments meet or exceed the criteria in the Listings found in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  If the claimant cannot prove that she has a listed impairment, she must prove alternatively that she is unable to perform her previous

---

[1] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) was a supplemental security income case under Title II.  The same sequence applies to disability insurance benefits under Title XVI.  Cases arising under Title II are appropriately cited as authority in Title XVI cases.  *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

work. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *see also Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th Cir. 1990). Once the claimant shows that she cannot perform her previous work, the burden shifts to the Commissioner "to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform." *Jones v. Apfel*, 190 F.3d at 1228.

When a claimant alleges that morbid obesity limits the claimant's ability to work, the ALJ is required to consider obesity in determining whether a claimant has medically determinable impairments that are severe. The ALJ must determine whether those impairments meet or equal any Listing Impairments. Under Social Security Ruling 02-01p, obesity is considered a severe impairment when, alone or in combination with another medically determinable physical or mental impair, the obesity significantly limits a claimant's physical or mental ability to perform basic work activities.

The ALJ has a duty to develop the medical record fully and to determine the claimant's RFC. 20 C.F.R. §§ 404.1527, 416.927(e)(2). The ALJ commits reversible error if the ALJ does not "order a consultive examination when such evaluation is necessary for the [ALJ] to make an informed decision;" however, the ALJ does not err in denying the claimant's request for a consultative examination when substantial evidence supports the ALJ's decision. *Holladay v. Bowen*, 848 F.2d 1206, 1209-10 (11th Cir. 1988) (quoting *Reeves v. Heckler*, 734 F.2d 519, 522 n. 1 (11th Cir. 1984).

## V. FACTS

The claimant has a high school education and was forty-one years old at the time of the administrative hearing. (R. 39). Her previous work experience includes employment as a nurse's

aide and a housekeeper. (R. 40-42). The claimant originally alleged she was unable to work because of acid reflux, thyroid cancer, cystectomy, and pain from her hiatal hernia. (R. 167). According to the claimant, her pain and spasms began in July of 2005 and again in January of 2008 when the claimant needed another hiatal hernia surgery. (R. 43). During the administrative hearing, however, the claimant's attorney stated that the claimant is unable to work because of her reflux disease in combination with the other impairments, including obesity. (R. 37).

*Physical Limitations*

On March 4, 2004, the claimant underwent surgery for thyroid cancer. (R. 250). The claimant continued to have radioactive iodine therapy under the care of Dr. George M. Perrine, treating oncologist, in July of 2004. (R. 245). During a follow up appointment on November 23, 2004, Dr. Perrine noted that the claimant's thyroid studies were normal; however, the claimant gained thirty pounds within eight months. According to Dr. Perrine, the claimant's main problem resulted from obesity and lack of exercise. (R. 243). The claimant's thyroid cancer is currently in remission. (R. 19).

On January 6, 2005, the claimant presented to Dr. Frank Denton Miller, an internal medicine specialist at the Bessemer Clinic, with complaints of lower extremity edema and pain on her left side. Dr. Miller prescribed Darvocet for the claimant's neck pain resulting from a motor vehicle accident on January 5, 2005. (R. 205).

On July 18, 2005 the claimant underwent surgery performed by Dr. John O. Issis, a general surgeon, to repair a hiatal hernia and fundoplication. (Fundoplication is the standard surgery performed to reduce heartburn caused by acid reflux). Dr. Issis diagnosed the claimant with severe esophageal reflux disease and a large hiatal hernia. Following the surgery, the

claimant did not require anti-reflux medication nor did the claimant experience any heartburn. (R. 218-22).

Dr. Willie Williams, internal medicine and hematology specialist, examined the claimant because of neck pain and spasms on July 30, 2007. X-rays of the claimant's cervical spine showed no traumatic abnormalities in the cervical spine. Dr. Williams prescribed Flexerial and Trammadol for the claimant's cervical spasms. (R. 355, 357).

On September 6, 2007, the claimant underwent an endoscopy performed by Dr. Issis because of the claimant's indigestion, heartburn, and reflux symptoms. Results from the procedure showed a moderate sized hiatal hernia. The claimant received samples of Protonix to relieve her symptoms, and Dr. Issis advised the claimant to lose weight. (R. 354.)

The claimant continued to complain of reflux symptoms, and on January 3, 2008, Dr. Issis performed an upper GI series with barium swallow. The claimant underwent a diagnostic laparoscopy on January 22, 2008, which showed that the claimant's Nissen fundoplication from the 2005 surgery had slipped. (R. 279). During the procedure, Dr. Issis restored the Nissen fundoplication. (R. 280). At a follow up appointment on February 6, 2008, Dr. Issis noted that the claimant was doing better, despite some reoccurring reflux. According to Dr. Issis's records, the claimant also indicated that her work at the nursing home was causing the reflux problems to continue, and she planned to talk to Dr. Williams to receive disability papers. (R. 282). The claimant quit working at the nursing home on January 20, 2008. (R. 147).

The claimant presented to Dr. Williams on February 7, 2008 with complaints of weakness from the laparoscopic surgery. The claimant weighed 276 pounds at the time of the appointment. During the appointment, the claimant indicated that she was going to apply for disability because

her job at the nursing home required heavy lifting. (R. 352). The examination results showed that the claimant's lungs and heart were normal. Dr. Williams ordered tests to check the claimant's thyroid function. (R. 353). On February 27, 2008 the claimant had a follow up appointment with Dr. Issis. During this appointment, the claimant indicated that she was experiencing spasms, and Dr. Issis prescribed Valium. However, according to the claimant, she was not experiencing reflux during the night at the time of the appointment. Dr. Issis also decided to keep the claimant out of work to allow adequate recovery from the surgery until March 17, 2008. On March 12, 2008, the claimant told Dr. Issis that the Valium prescription improved her spasms. Again, the claimant emphasized how Dr. Williams was trying to work on her disability papers. However, from Dr. Issis's records and standpoint, he thought the claimant was doing great. (R. 282).

On May 9, 2008, Dr. Scott Touger, a consulting internist, examined the claimant. The claimant complained of stabbing chest pain and headaches. During the examination, the claimant could squat and rise, along with walking on her heals and toes. Dr. Touger noted that the claimant had full range of her shoulders, lumbar spine, cervical spine, knees, and ankles. *Id.* At the time of the examination, the claimant weighed 273.4 pounds. Dr. Touger thought that the claimant's restrictive airways and shortness of breath directly resulted from the claimant's obesity. As a result, Dr. Touger concluded that he did not see any physical incapabilities other than the claimant's obesity. Dr. Touger recommended that the claimant lose at least 50% of her body weight. (R. 336-38).

The claimant had another appointment with Dr. Williams, on May 27, 2008 because of swelling in her neck. Dr. Williams noted hyperreflexia and dysphasia; however, the claimant's

carotid sounds were normal. Again, Dr. Williams instructed the claimant to have another thyroid function check. The claimant lost 4 pounds since the previous appointment, and she weighed 273 pounds. (R. 349-50).

On July 1, 2008, the claimant presented to Dr. Daniel V. Kyle, treating internist. The claimant provided her prior medical history, and she complained of occasional neck pain, anxiety, dizziness, and a headache. Dr. Kyle's assessment included hypertension, esophageal reflux, anemia, possible hematuria, morbid obesity, and depression with anxiety. The claimant refused any treatment at the time of the appointment for depression. However, Dr. Kyle prescribed Nexium, Levothroid, Hydrochlorothiazide, and Meloxicam for the claimant's blood pressure, swelling, and stomach reflux problems. (R. 376-77).

The claimant returned to Dr. Kyle for a follow-up appointment on August 6, 2008 with complaints of chest pain while lying down at night, shortness of breath, and palpitations with extended walking. During the examination, Dr. Kyle determined that the claimant's respiration rhythm and heart sounds were normal. Dr. Kyle's assessment revealed that the claimant's hypertension and esophageal reflux were improving since the last appointment. The claimant's obesity was unchanged, and Dr. Kyle recommended a consultation with a dietician for the claimant. During another follow-up appointment on November 12, 2008, the claimant indicated that her shortness of breath was improving; however, the claimant was still experiencing heartburn at night. (R. 373-75).

The claimant presented to the emergency room on April 5, 2009 with complaints of swelling and pain in her left hip. X-rays of the claimant's pelvis and hip showed no acute abnormalities. The emergency room doctor determined that the claimant's symptoms result from

arthritis, which causes swelling in the claimant's joints. The claimant was instructed to lose weight and participate in mild forms of exercise. (R. 400-406).

On October 13, 2009, an x-ray of the claimant's esophagus revealed a sliding hiatal hernia with reflux. (R. 427). As a result, Dr. James W. Bonds, a general surgeon, performed an esophagogastroduodenoscopy (EGD) (a test to examine the lining of the esophagus) on November 9, 2009 at Cooper Green Mercy Hospital. The exam showed that the claimant's prior Nissan fundoplication had slipped. A biopsy taken during the exam was negative, and Dr. Bonds did not see any evidence of ulcers. (R. 417-419). Dr. Bonds did not recommend any further medical action for the claimant's slipped fundoplication. (R. 423).

*The ALJ Hearing*

After the Commissioner denied the claimant's request for supplemental security income, the claimant requested and received a hearing before an ALJ. (R. 34, 79). At the hearing, the claimant testified that her pain, on a scale from one to ten, averages around a seven on a regular basis. (R. 48). However, the claimant did testify that her pain reaches a level ten in the morning. (R. 48-49). The claimant's height was 5'5" and at the time of the hearing she testified that her current weight was 279 pounds. (R. 39). The claimant attributed her weight gain to thyroid cancer in 2002, which is now in remission. (R. 39, 44).

The claimant testified that she left work on January 18, 2008 to have another hiatal hernia surgery. The claimant confirmed that her first hiatal surgery was in 2005. She complained of having chest pains, muscle spasms, pain in her neck, heart burn, and feeling nauseated from the hernia. (R. 42-44). The claimant further confirmed that these symptoms cause her to feel out of breath when she walks ten to fifteen yards. (R. 46). She also testified that she can lift light

objects and stand for approximately an hour before she needs to sit down. (R. 47, 51). The claimant described how she experiences difficulty sleeping because of the acid reflux, which causes a choking sensation.

The claimant also testified that she spends most of her day lying down because of the fatigue and weakness. (R. 45). The claimant further informed the ALJ that she had an endoscopy performed at Cooper Green a few days before the ALJ hearing to determine whether the claimant had ulcers in her stomach. However, the test results were not available at the time of the hearing. (R. 50).

Mr. David Head, a vocational expert, offered testimony about the claimant's past work experience including the physical demand and transferrable skills. Mr. Head testified that the claimant's past work experience as a nurse's aide and a house keeper were classified as medium to heavy in exertion. The ALJ presented a hypothetical involving the claimant's same age, education, past relevant work, and a history of thyroid cancer that is in remission. In this hypothetical, the ALJ also included a history of two hernia surgeries, severe obesity, severe reflux disease, shortness of breath, fatigue, and difficulty associated with standing and walking. (R. 52-54).

Mr. Head concluded that a person similarly situated to the claimant could not perform jobs requiring levels of medium or heavy exertion. (R. 24). Mr. Head also testified that based on the hypothetical, the hypothetical worker would need an unskilled entry level, sedentary job that allows the claimant the freedom to stand periodically throughout the day. According to Mr. Head, examples of non-complex clerical jobs include information clerk and telephone answering clerk. (R. 54). He further confirmed that work involving each of these jobs was available in

Alabama and the national economy.

The ALJ then modified the hypothetical to include new information that shows pain reaching to a seven, chest pains that feel like a heart attack, and intense burning when an individual wakes up along with the hernia and reflux. The vocational expert responded to the new hypothetical by concluding that the above symptoms would preclude work. Mr. Head also testified that two or more absences in one month would prevent an individual from maintaining employment. (R. 54-55).

*The ALJ's Decision*

On February 26, 2010, the ALJ issued a decision finding the claimant was not disabled under the Social Security Act. (R. 17-25). The ALJ's findings of fact and conclusions of law followed the five-step legal standard outlined in 20 C.F.R. §§ 404.1520, 416.920.

First, the ALJ found that the claimant had not engaged in any substantial gainful activity since the alleged onset of her disability. (R. 19). Next, the ALJ found that the claimant's gastroesophageal reflux disease (GERD), hiatal hernia status/post fundolipication (x 3), and obesity qualified as severe impairments. *Id.* However, these impairments do not singly or in combination manifest the specific signs and diagnostic findings required by the Listing of Impairments. (R. 22).

Proceeding to step four, the ALJ considered the claimant's subjective complaints and alleged limitations to determine whether the claimant had the residual functional capacity to perform past relevant work. The ALJ found that the claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." The ALJ considered the evidence on record to conclude that the claimant could not perform her past relevant work as

a housekeeper or nurse's aide. However, the ALJ concluded that the claimant's obesity considered alone or in conjunction with the claimant's other impairments was not severe to the extent of preventing the claimant from performing any work. The ALJ further determined that the claimant was not disabled based on the Medical Vocational Rules. (R. 23-24).

In support of this conclusion, the ALJ proceeded by analyzing the claimant's medical history and noting that each health problem was either resolved or improving according to the doctors. The ALJ referenced the surgery notes of Dr. Issis from July 18, 2005, when the claimant underwent laparoscopic surgery to repair the first hiatal hernia. The claimant's surgery was a success, and she did not require any anti-reflux medication following the surgery. (R. 20).

The ALJ referenced notes from July of 2007 by Dr. Williams who saw the claimant for neck pain and spasms. The notes from Dr. Williams indicated that x-rays of the claimant's cervical spine were reported as negative. According to Dr. Williams, the claimant's "tests and systems" were all normal on February 7, 2008. The ALJ also summarized the follow-up appointments with Dr. Issis, who reported on February 27, 2008 that the claimant was "doing well, but still experiencing some spasms." Furthermore, on March 12, 2008, Dr. Issis also noted that the claimant was doing great and that her spasms had improved with the Valium prescription. (R. 20).

The ALJ briefly mentioned notations from Dr. Kyle who saw the claimant for the first time on July 1, 2008. According to Dr. Kyle, the claimant's "respiration rhythm and rate was normal." The claimant's lumbar and cervical spine examinations were also normal. On a follow-up appointment on August 6, 2008, Dr. Kyle reported the claimant as having "occasional chest discomfort when lying down." In November of 2008, the claimant reported that her

shortness of breath was improving even though the heartburn remained the same.  (R. 21).

The ALJ also relied heavily on the consultative examination performed by Dr. Touger, who noted that the claimant was able to squat and walk on her heels and toes.  According to Dr. Touger, the claimant "did not have any other physical incapacity other than her obesity."  (R. 24).  As a result, the ALJ afforded substantial weight to Dr. Touger's opinions because his opinions "were consistent with the medical evidence of record."  Regarding the claimant's GERD, the ALJ observed that the claimant's most recent doctor visits showed that her condition was stable to the point that the physician recommended doing nothing even though the claimant's fundolipication had slipped.  (R. 23, 417-29).

The ALJ also referenced the Physical Activities Questionnaire from March 23, 2008 where the claimant indicated that she cannot lift the trash can or push a vacuum cleaner.  (R. 162).  However, the claimant stated that she has the ability to perform light housekeeping chores, prepare meals, and drive to the store.  (R. 23, 160, 162).  The ALJ further acknowledged that even though the medical evidence classified the claimant as morbidly obese, the claimant was not severely limited to deprive her of all work activity.  (R. 23-24).

The ALJ ultimately concluded that the claimant would not be capable of performing past relevant work, but determined that the claimant maintained "a residual functional capacity for the full range of sedentary work."  Relying on Medical-Vocational Rule 201.28 and the testimony of Mr. David Head, the vocational expert, the ALJ found that the claimant was capable of working "non-complex clerical jobs," such as an informational clerk or telephone clerk, which are currently available in Alabama and the national economy.  (R. 25, 54).  The ALJ determined that the residual functional capacity assessment was supported by the opinion evidence and the

medical treatment records, which the ALJ used to conclude that the claimant was not disabled.

## VI. DISCUSSION

**I. Whether the ALJ failed to consider the effects of obesity on the claimant's RFC.**

The claimant contends that the ALJ improperly failed to consider morbid obesity as part of the claimant's disability determination in accordance with Social Security Ruling 02-1p. To the contrary, this court finds that the ALJ properly considered the claimant's morbid obesity in connection with the claimant's RFC. Under Social Security Ruling 02-1p, the ALJ is required to consider obesity in determining whether a claimant has medically determinable impairments that are severe and whether those impairments meet or equal any Listing Impairments. Obesity is considered a severe impairment when, alone or in combination with another medically determinable physical or mental impairment, it significantly limits the claimant's physical or mental ability to do basic work activities. Although obesity is not included in the Listings, a claimant with obesity meets the requirements of a listing, if the claimant has another impairment under the listings. 20 C.F.R. § 404.1525(a); 20 C.F.R. § 416.925(a). However, if the claimant's obesity causes significant limitations, the obesity, by itself, may be substituted for a medical equivalence under the listings. SSR 02-1p.

The claimant contends that the ALJ's decision is not supported by substantial evidence because the ALJ failed to take into consideration the claimant's morbid obesity. (Doc. 9). However, the court finds that the ALJ properly complied with the guidance of SSR 02-1p in assessing the claimant's obesity. Although the medical evidence confirms that the claimant is morbidly obese, the ALJ concluded that the claimant's subjective obesity-related limitations and complaints conflict with the medical treatment records and opinion evidence. (R. 19).

14

Specifically, the ALJ considered Dr. Touger's assessment that the claimant's obesity did not prevent full range of motion in all joints and extremities. (R. 337-38). However, Dr. Touger emphasized how the claimant's obesity would cause shortness of breath. The ALJ then referred to the claimant's statement that by November of 2008, her shortness of breath had improved. The ALJ further noted that the claimant's obesity-related limitations did not prevent her from all work. During the ALJ hearing, the claimant testified that she can stand for an hour before needing to sit down. (R. 51). The claimant also reported that she can participate in light house work, drive a car, and prepare meals. (R. 160). As a result, the ALJ properly considered the claimant's obesity as required under SSR 02-1p along with Grid Rule 201.28 to conclude that the claimant has an RFC for sedentary work.

## II. Whether the ALJ erred by failing to obtain an additional medical opinion to determine the claimant's RFC.

The claimant also argues that the ALJ's determination of the RFC is not based on substantial evidence. The claimant contends that the ALJ should have obtained another physician opinion specifically for evaluating the claimant's RFC. (Doc. 9). The ALJ has a basic obligation to fully and fairly develop the record. *Cowart v. Schweiker*, 662 F.2d 731, 735-36 (11th Cir. 1986). The RFC is an assessment, based upon all of the relevant evidence of a claimant's remaining ability to do work despite the claimant's impairments. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). In determining the claimant's RFC, the ALJ "must determine if the claimant is limited to a particular work level." *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). The regulations provide that the ALJ may order a consultative examination when warranted; however, the ALJ is not required to seek an additional medical opinion to make a disability determination when substantial evidence supports the ALJ's

decision. 20 C.F.R. § 404.1517; *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1984).

Contrary to the claimant's argument, the Eleventh Circuit does not require a medical opinion for the ALJ to determine the claimant's RFC when substantial evidence exists in the record. The Eleventh Circuit addressed a similar issue in *Green v. Social Security Administration*. *Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 923 (11th Cir. 2007). The claimant argued that the ALJ erred in determining the RFC because the record lacked a doctor's opinion that the claimant could perform light work. *Id.* at 923. The claimant argued that the ALJ needed to consider a medical opinion to support the RFC findings. In response, the court held that substantial evidence supported the ALJ's determination of the RFC, despite the lack of a doctor's opinion specifically addressing the RFC. *Id.* at 923-24. The ALJ correctly considered notes from other doctor's visits contained in the record that indicated the claimant's problems were under control. *Id.* at 924.

In the present case, the ALJ concluded that the claimant had an RFC to perform the full range of sedentary work. (R. 22). In reaching this conclusion, the ALJ considered claimant's testimony at the ALJ hearing along with supporting evidence from the claimant's treating physicians. (R. 23). The ALJ properly concluded that the claimant could no longer perform past work as a nurse's aide or housekeeper. (R. 24). The ALJ then assessed whether the claimant could perform any competitive work. The ALJ analyzed the claimant's RFC, age, work experience, and education to determine that significant amounts of sedentary jobs exist in the national economy. (R. 25). Relying on the Medical-Vocational Guidelines, the ALJ concluded that the claimant's RFC supports the ability to perform sedentary work based on her age, past work experience, and high school education. As a result, the claimant's RFC, as determined by

the ALJ, is based on substantial evidence, and the Eleventh Circuit does not require an RFC evaluation from a physician.

Based on the explicit findings of the ALJ, this court concludes that the ALJ properly evaluated the claimant's morbid obesity in accordance with SSR 02-1p, and that substantial evidence supports the ALJ's determination of the claimant's RFC. This court, like the ALJ, acknowledges that the claimant suffered various medical impairments lasting for many months. The weight of the evidence, however, does not support a finding of any identifiable, sustained limitation that prevents the claimant from all sedentary work activity. On the contrary, the opinion evidence of Dr. Touger in conjunction with the medical evidence of record reveals that the claimant's impairments do not render the claimant disabled. Substantial evidence supports the ALJ's application of the claimant's morbid obesity and RFC. Therefore, this court affirms the decision of the Commissioner.

## VII. CONCLUSION

For the reasons as stated, this court concludes that the decision of the Commissioner is supported by substantial evidence and is to be AFFIRMED. The court will enter a separate order in accordance with this Memorandum Opinion.

DONE and ORDERED this 5th day of April, 2012.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE